IN THE UNITD STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Dimitrios PAPAZOGLOU, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | |
| ) | No. 1:12-cv-00892 |
| Janet Napolitano, Secretary, U.S. Department ) | |
| of Homeland Security; Ricardo Wong, ) | Judge Sharon Johnson Coleman |
| Chicago Enforcement and Removal Office ) | |
| Director, U.S. Immigration & Customs ) | |
| Enforcement, U.S. Department of Homeland ) | |
| Security; Karen Lundgren, Chicago Chief ) | |
| Counsel, Office of Chief Counsel, Immigration) | |
| & Customs Enforcement, U.S. Department of ) | |
| Homeland Security; ) | |
| ) | |
| Respondents. ) | |

**MEMORANDUM OPINION AND ORDER**

Dimitrios Papazoglou ("Petitioner") filed a petition for a writ of habeas corpus challenging the constitutionality of 8 U.S.C. § 1226(c) and requesting his release from custody. Petitioner argues two constitutional challenges: (1) that his detention in excess of thirteen (13) months is unreasonable and in violation of substantive due process in light of the granting of full relief from removal by the Immigration Judge ("IJ") and the delays by the Department Homeland Security ("DHS") in placing him into removal proceedings as well as its delay regarding the adjudication of the I-130 visa petition and (2) that he failed to receive strong procedural protections to safeguard his fundamental liberty interests and his immigration detention exceeded a reasonable length of time. Respondents oppose the petition for writ of habeas corpus arguing that this Court lacks subject matter jurisdiction, that Papazoglou failed to exhaust his remedies prior to this petition and that his detention is lawful

and reasonable. For the reasons that follow, Petitioner's writ of habeas corpus is granted in part.

**Factual background**

Petitioner Dimitrios Papazoglou, a 54 year old Greek national, has resided in the U.S. as a lawful permanent resident since July 16, 1990. In 2008, Papazoglou pled guilty and was convicted of third degree sexual assault in violation of Wis. Stat. § 940.225(3) and physical abuse of a child in violation of Wis. Stat. § 948.03(3)(b). As a result of his offense against a minor child, on April 21, 2011, DHS initiated deportation proceedings against Papazoglou by issuing and serving him with a Notice to Appear ("NTA"). After completing his prison sentence, petitioner was transferred to Immigration & Customs Enforcement ("ICE") custody where he was mandatorily held due to the serious nature of his criminal convictions.

On May 16, 2011, pursuant to the NTA, Papazoglou appeared before an IJ who found Papazoglou removable under 8 U.S.C. § 1227(a)(2)(E)(i) for having been convicted of child abuse but reserved the issue of whether he was removable as an aggravated felon under 8 U.S.C. § 1227(a)(2)(A)(iii). Although found eligible for removal, petitioner was also eligible to apply for relief from removal. Thus, at this same hearing, Papazoglou presented the IJ with an I-130 visa petition (which is a petition filed on behalf of alien relatives), which had been previously filed on May 13, 2011 by his wife a U.S. citizen. Petitioner also later filed a Form I-485 application for adjustment of status and a Form I-601 application for waiver of grounds of inadmissibility.

On November 17, 2011, the IJ granted Papazoglou's Form I-601 waiver and adjustment of status. The IJ found that, in spite of his convictions stemming from a guilty plea of an offense against a minor, Papazoglou merited a favorable exercise of discretion and full

relief from removal. Although having received a ruling in his favor, DHS continued to detain Papazoglou and on December 16, 2011, filed for an appeal of the IJ's decision with the Board of Immigration Appeals (the "Board").

On December 19, 2011 Papazoglou filed a motion for a bond redetermination with the Immigration Court. On January 18, 2012, the IJ held a bond redetermination hearing during which Papazoglou's request for custody redetermination was granted and he was released. On the same day, DHS filed for an automatic stay of the IJ's bond order with the Board resulting in Papazoglou's continued custody. Nine days later, on January 27, 2012, DHS withdrew the automatic stay and filed a motion for a discretionary stay of the bond order, which was later granted by the Board on February 2, 2012. However, Papazoglou had already been released from custody on February 1st pursuant to DHS's withdrawal of the automatic stay of the bond order but was taken back into custody on February 8, 2012 when the Board granted the discretionary stay.

On March 6, 2012, DHS appealed Papazoglou's bond order. Currently, Papazoglou remains in custody, pursuant to § 1226(c), awaiting the resolution of DHS's appeal of both his release from custody and his adjustment of status. While awaiting the results of both appeals, Papazoglou filed this petition for a writ of habeas corpus in this Court under 28 U.S.C. § 2241 challenging the constitutionality of his indefinite detainment and seeking an injunction to release him from custody.

**Discussion**

**I. Jurisdiction under 8 U.S.C § 1226(e)**

Respondents first contend that this Court is without jurisdiction to provide the relief Papazoglou is seeking in his petition. Specifically, respondents argue that Papazoglou is currently detained based the Attorney General's unfettered discretion to stay petitioner's bond and judicial review of the exercise of that discretion is barred.

The Seventh Circuit has held that 8 U.S.C. § 1226(e) does not deprive this Court of jurisdiction over this matter. *Gonzalez v. O'Connell*, 355 F.3d 1010, 1014 (7th Cir. 2004).

§ 1226(e) states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole. *Id.*

Federal district courts, however, have jurisdiction over constitutional questions raised in habeas corpus petitions. *Bonsol v. Perryman*, 240 F. Supp. 2d 823, 825 (N.D. Ill. 2003). Although § 1226(e) of the Immigration and Nationality Act ("INA") forecloses judicial review of discretionary INA decisions on bond or detention, the constitutionality of the statute itself as applied to a specific matter may still be adjudicated in court. *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999).

Although at first glance, § 1226(e) appears to preclude judicial review of the Attorney General's discretionary stay under § 1226(c), this very argument was rejected by the Seventh Circuit in *Parra v. Perryman* and more recently by the Supreme Court in *Demore v. Kim*, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003); *Parra*, 172 F.3d at 957. In both *Parra* and *Kim*, aliens who were mandatorily detained under § 1226(c) challenged that section as unconstitutional. *Gonzalez*, 355 F.3d at 1014. The Supreme Court in *Kim* held that it was not

deprived of jurisdiction by § 1226(e) to consider a challenge based on constitutionality because the petitioner was not simply challenging the discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release; rather the petitioner challenged the statutory framework that permitted his detention without bail. *Id*. The Supreme Court concluded that "Section 1226(e) contains no explicit provision barring habeas review, and we think that its clear text does not bar respondent's constitutional challenge to the legislation authorizing his detention without bail." *Kim*, 538 U.S. at 51.

Here, Papazoglou raises two constitutional challenges: first, that his detention in excess of thirteen (13) months is unreasonable and in violation of substantive due process in light of the IJ's decision granting him full relief from removal; and second that as a lawful permanent resident his detention has exceeded a reasonable period of time. Pet. for Writ of Habeas Corpus, ¶ 35. Papazoglou, like the petitioners in *Kim*, and *Parra*, is not challenging the "operational decisions" of the Attorney General but the "statutory framework that permits his detention without bail." *Gonzalez*, 355 F.3d at 1014. As such, this Court may exercise jurisdiction under the habeas corpus statute and consider Petitioner's due process claims and whether § 1226(c) is being constitutionally applied.

**II. Constitutionality of 8 U.S.C § 1226(c)**

**Procedure under 8 U.S.C § 1226(c)**

Section 1226(c) allows the Attorney General to take into custody and mandatorily detain certain criminal aliens against whom removal proceedings have been initiated, but not yet completed. Aliens eligible for mandatory custody under Section 1226(c) include those who are deportable because they have been convicted of an aggravated felony. 8 U.S.C. §1227(a)(2)(A)(iii). If an alien subject to mandatory detainment claims that he is not eligible

for Section 1226(c) mandatory detainment, a "Joseph Hearing" before an IJ is immediately provided. *Kim*, 538 U.S. at 514. At this hearing, the detainee may avoid mandatory detention by demonstrating any one of the following: (1) he is not an alien; (2) he was not convicted of the predicate crime; or (3) that INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention. *Id*. If the IJ determines the alien falls within § 1226(c), then he is without authority to conduct an individualized bond determination. *Gonzalez*, 355 F.3d at 1013. However, if the IJ determines the alien does not fall within § 1226(c), then IJ may consider the question of bond. *Id*.

Here, Petitioner does not argue that he is not subject to § 1226(c), but instead argues that his detention under § 1226(c) is unconstitutional. The Supreme Court and the Seventh Circuit have ruled on the constitutionality of § 1226(c), but as applied to aliens who have conceded that they are eligible for deportation. *See Kim*, 538 U.S. at 531; *Parra*, 172 F.3d at 957. For example, in *Parra*, a detainee and Mexican citizen, agreed with the INS that the drug offense to which he pled guilty made him eligible for deportation back to Mexico. *Id*. Because there was no possibility of avoiding deportation, rendering his removal "overwhelmingly likely", the court held that the detainee's request for a bond release was merely an attempt to "postpone the inevitable." *Id*. In other words, the Seventh Circuit ruled that the mandatory detention without a bond hearing was constitutional as applied to an alien who had conceded deportability and is merely "passing time while waiting for the order to become final." *Vang v. Ashcroft*, 149 F. Supp. 2d 1027, 1033 (N.D. Ill. 2001).

The *Parra* decision left the door open to claims made by detainees who had not yet conceded deportability, but instead had colorable claims that they were not in fact deportable. *Id*. Thus, later courts determined that *Parra* left open an exception for three categories of

6

aliens whose deportations, unlike in *Parra*, were not certain. These categories of aliens include: 1) aliens who claim they are citizens; 2) aliens who claim they have not been convicted of the offenses that trigger removal; and 3) aliens who have no country to which they can be removed. *Bonsol*, 240 F. Supp. 2d at 826. For these aliens, mandatory detention raised questions of due process violations. *Id.*; *See Hussain v. Mukasey*, 510 F.3d 739, 743 (7th Cir. 2007) (recognizing that there are instances in which an alien detained pursuant to 8 U.S.C. § 1226(c) may have a right to release before a final judgment is entered).

In the present case, Papazoglou suggests that his case qualifies as an example of an exception to the *Parra* decision. Specifically, Papazoglou contends that his mandatory detention without bail is unconstitutional because he has a colorable, good faith claim that he is not deportable – namely that an IJ has already determined that he is eligible to remain in the United States. Therefore, given the length of Papazoglou's detainment and that he has already received a judgment in his favor, Papazoglou seeks habeas corpus relief.

Since *Parra*, several district courts in our circuit held § 1226(c) as unconstitutional as applied to detainees who have not conceded removability and have good-faith claims against deportation. *See Gonzalez*, 355 F.3d at 1019 (finding that a "wholly different case arises when a detainee who has a good-faith challenge to his deportability is mandatorily detained under § 1226(c)"); *Bonsol*, 240 F.Supp.2d at 825 (noting that without an individualized bond hearing, the INS' mandatory detention of the Petitioner, a lawful permanent resident with a good-faith challenge to deportation, is unconstitutional); *Vang*, 149 F.Supp.2d at 1036. In *Vang*, the court found that mandatory detention under § 1226(c) potentially infringed upon the detainee's fundamental liberty interests and analyzed the constitutionality of § 1226(c) under

7

the compelling interest test set forth in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed. 2d 697 (1987).

In *Salerno*, the Supreme Court held that the government may not infringe upon a person's fundamental liberty interests, unless the infringement was narrowly tailored to serve a compelling state interest. *See Vang*, 149 F.Supp.2d at 1037 (citing *Martinez v. Greene*, 28 F.Supp.2d. 1275 (D. Colo. 1998)). In the context of immigration statutes and regulations, to determine if the infringement is narrowly tailored to serve a compelling state interest, the court must first determine if the infringement is a punitive punishment or permissible regulation. *Id.*, at 1282. If the infringement is a permissible regulation, then the court must determine if the infringement is excessive in relation to purpose of the said regulation. *Id*.

Here, Papazoglou received both full relief from removal and subsequent release from custody from the IJ. Nevertheless, Papazoglou remains in custody awaiting the resolution of DHS's appeal. Papazoglou has demonstrated a legitimate and good faith reason to contest his removability, namely that an IJ has already determined that Papazoglou merits full relief from removal. Therefore, unlike *Parra*, Papazoglou is not postponing inevitable deportation but instead presents a legitimate defense to his removability where his deportation is not "overwhelmingly likely". *See Bonsol*, 240 F.Supp.2d at 826; *Parra*, 172 F.3d at 956. Thus, Papazoglou's detainment under § 1226(c) without the opportunity for a bond hearing presents a question of constitutionality.

Having found that Papazoglou has presented a valid question of whether § 1226(c) is being applied in accordance with due process, this Court, applying the *Salerno* framework to Papazoglou's claims, finds that respondents have failed to satisfy the second element of the *Salerno* test. Specifically, this Court finds that the goals outlined by Congress for mandatory

detention under § 1226(c) do not justify holding Papazoglou in custody without a bond hearing. The Court recognizes that the government has a compelling interest in detaining aliens with felony convictions without bond. These interests include "(1) protecting the public from potentially dangerous criminal aliens; (2) preventing aliens from absconding during removal proceedings; (3) correcting procedures under which twenty percent of criminal aliens released on bond did not report for deportation hearings and (4) restoring public faith in the immigration system." *Id.* at 1037, citing S. Rep. No. 104-48 (cited in *Rogowski v. Reno*, 94 F.Supp.2d.177, 184 (D. Conn. 1999)). These are clearly legitimate regulatory goals.

Additionally, respondents argue that Papazoglou has a pending expedited appeal and his removal proceedings are ongoing which denotes that a definite end is in sight. The Court, however, notes that respondents have failed to present this court with a date certain for their appeal of petitioner's bond or for their appeal of his waiver of deportation. Therefore, petitioner has been in custody for over a year without any indication that his matter is nearing resolution.

Papazoglou remains mandatorily detained despite the fact that he has demonstrated substantial likelihood that he will be allowed to remain in the United States and will be released from custody because these findings have already occurred. As a convicted felon who has pled guilty to committing a crime against a minor child, Papazoglou does not have an absolute right to remain at liberty during the course of his removal proceedings. Nevertheless, to achieve the ends of justice, this Court must give full consideration to the circumstances of this case. Given these circumstances – that respondents are the appellant party, a date certain for either appeal has yet to be set, Papazoglou has been detained for over a year and an IJ has already determined Papazoglou should be released from custody –

mandatory detention, without the opportunity of a bond hearing or a date set for Papazoglou's pending appeals is excessive in relation to the purpose of § 1226(c) outlined above. Thus, Papazoglou's due process rights have been violated.

Allowing a bond redetermination on this matter would afford Papazoglou his due process rights without defeating the regulatory purpose of § 1226(c). Therefore, in the interest of justice, this Court directs that a bond redetermination hearing before an IJ be held immediately, within seven (7) days of this order to determine whether continued detention until the resolution of DHS appeal of Petitioner's waiver of deportation is warranted in light of *Parra* and the applicable district court decisions that follow. Furthermore, respondents must provide a hearing date certain before the Board within 45 days of this order.

This Court understands that jurisdiction over this bond hearing lies with the immigration judge and the immigration authorities in the application of the INA. The Court, nevertheless, is particularly concerned that the Petitioner has pled guilty to child abuse and sexual abuse of a minor but there is no record showing counseling or rehabilitation outside of Petitioner's own acknowledgment to ameliorate his condition. Therefore, this Court expects any decision rendered to take full consideration not only of the appropriateness of bond, but also of the necessity to include certain conditions such as mandatory counseling, implementation of supervision restrictions, and any other parameters or restrictions to ensure the safety of the pubic, particularly that of minor children.

## CONCLUSION

For the forgoing reasons, the Court grants Petitioner Papazoglou's petition for writ of habeas corpus and order that a bond hearing be held before an Immigration Judge within seven (7) days of this order. Further, this Court orders that respondents provide a hearing date certain before the Board of Immigration Appeals within 45 days of this order.

IT IS SO ORDERED.
May 3, 2012

Dated                                    Hon. Sharon Johnson ColemanUnited
                                         States District Court